# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 371 | **DATE** | 10/31/2000 |
| **CASE TITLE** | Benedicto Flores vs. Kenneth S. Apfel | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: The Commissioner's motion for summary judgment [9-1] is granted. Plaintiff's motion for summary judgment [8-1] is denied. This case is hereby terminated.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | NOV 01 2000 |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| TSA | courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BENEDICTO FLORES, )
Social Security No. 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, )
)
                Plaintiff, )
) Case No. 00 C 0371
v. )
) Judge Wayne R. Andersen
KENNETH S. APFEL, )
Commisioner of Social Security, )
)
                Defendant. )



## MEMORANDUM OPINION AND ORDER

The Department of Health and Human Services denied disability insurance benefits to Benedicto Flores. Plaintiff brings this action requesting that we reverse the ruling of Kenneth S. Apfel, Social Security Commissioner, which affirmed the decision of the Department of Health and Human Services. Plaintiff has brought a motion for summary judgment. Commissioner Apfel has brought a motion for summary judgment asking for the denial of benefits to be affirmed. For the following reasons, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

## BACKGROUND

I. Administrative Background

On March 11, 1996, plaintiff applied for Disability Insurance Benefits pursuant to 42 U.S.C. §§ 416(i), 423, claiming disability as a result of his condition of pemphigus vulgaris, a chronic skin condition known to cause large, severe blisters, which tend not to



heal, on the mucous membranes. Plaintiff claimed to have been disabled since December 23, 1995. The Department of Health and Human Services denied plaintiff's application on April 18, 1996. Plaintiff filed a second application on September 25, 1996 and was again denied benefits on January 7, 1997. Plaintiff appealed the ruling on January 14, 1997, and the Department of Health and Human Services denied reconsideration on March 24, 1997. After his appeal was denied, plaintiff requested a hearing on May 5, 1997.

On June 29, 1998, an evidentiary hearing was held before Administrative Law Judge Irving Stillerman ("ALJ"). On October 13, 1998, the ALJ issued a decision rejecting plaintiff's claim. Plaintiff appealed the ALJ's decision, and the Appeals Council rejected the request for review on December 20, 1999.

At the hearing before the ALJ, plaintiff testified that he receives varying amounts of medication for his pemphigus, depending on the current state of his illness. Plaintiff testified that these medications, which include a steroid for treatment of the pemphigus and several narcotic painkillers, render him unable to perform any kind of work. Plaintiff claimed that the medications impair him both physically and mentally. Physically, the medications cause him severe pain in his back and muscles, which restricts his ability to walk, stand, and lift objects. Plaintiff testified that the combined effects of his medications and his condition often restricted him from eating meals regularly, that he was often unable to drive, and that he was unable to stand for periods exceeding one hour. Mentally, plaintiff testified that the medications cause him to be constantly drowsy, to have difficulty thinking, and to be easily irritated.

The plaintiff's stepdaughter, Maria Tonkin, testified that she has seen plaintiff at least once a week for the last four years. Ms. Tonkin stated that she has observed several changes in her stepfather since he became ill and began taking medication. She testified that he has become very irritable, has trouble lifting her four-year-old daughter, has lost strength, has difficulty walking up steps, has become foggy in his thinking, and grows tired easily. Ms. Tonkin also testified that he complains of pain in his mouth, and his face is sensitive to touch.

After consideration of the record, the ALJ found that:

1. The claimant meets the disability insured status at all times relevant to this decision.
2. There is no evidence of work activity since the alleged onset date in this case.
3. The medical evidence establishes that the claimant has the following medically determinable impairment(s): pemphigus vulgaris, under good control. The claimant's impairment(s) significantly limits the ability to perform basic work activities and is therefore "severe."
4. The claimant's impairment(s) neither meets the requirements nor equals the level of severity contemplated for any impairment listed in Appendix 1 to Subpart P, Regulations No. 4.
5. The claimant's allegations of disabling symptoms and limitations are not considered fully credible....
6. The claimant has the residual functional capacity to perform the requirements of work except for: lifting in excess of 20 pounds occasionally or 10 pounds frequently, understanding, remembering, and /or carrying out detailed and complex work tasks; and performing jobs which require frequent speaking with others or exposure to pulmonary irritants (20 CFR 404.1545).
7. The claimant is unable to perform any past relevant work.
8. The claimant has the residual functional capacity to perform a limited range of light work (20 CFR 404.1567).
9. The claimant, born May 8, 1952, is 46 years old, which is classified as a younger individual (age 45-49) (20 CFR 404.1564).
10. The claimant has a marginal education (completed 6 years of school) and is illiterate in English (20 CFR 404.1564).
11. The claimant has an unskilled past relevant work history.
12. Although the claimant's limitations permit the performance of only a limited range of light work, they do not significantly erode the occupational base of jobs contemplated under Medical-Vocational rule 202.16. Therefore, using

3

that rule(s) as a framework for decision-making, a conclusion is warranted that the claimant retains the capacity to perform jobs existing in significant numbers in the economy.
13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1420(f)).

This decision became final when the Appeals Council denied the plaintiff's request for review. Plaintiff now seeks judicial review of the ALJ's ruling.

II. Factual Background

In addition to the testimony of the plaintiff and his stepdaughter concerning his alleged disability, the hearing adduced a large body of medical evidence. In December of 1995, plaintiff was admitted to Northwest Community Hospital for severe mouth and throat pain. During that hospital stay, a biopsy confirmed the diagnosis of pemphigus vulgaris. Plaintiff's treating physician, Dr. John McGillen, treated plaintiff's condition with immunosuppressants and Prednisone, a steroid. Because plaintiff was often taking as much as 100 mgs of Prednisone a day to treat the illness, plaintiff became an insulin-dependent diabetic. Plaintiff was also prescribed narcotic pain relievers to combat the severe pain caused by his condition. At that time, Dr. McGillen stated that, because of the toxicity of his medications, plaintiff was unable to work. Dr. McGillen also stated that he anticipated that plaintiff would again be fit to work once his condition stabilized and the dosage of medications necessary to treat him was reduced.

Dr. Guitart, a dermatologist from Northwestern Memorial Hospital, observed that plaintiff had a flare-up in late January of 1996 that required hospitalization, but that it improved slowly in response to treatment. During the period between February and September of 1996, plaintiff's condition slowly responded to Prednisone treatment.

4

Although plaintiff still experienced some pain and discomfort as a result of the pemphigus, his condition had improved significantly. In fact, Dr. Guitart reported that plaintiff's Prednisone dosage had been reduced to just 5 mgs per day and that plaintiff's pemphigus was essentially inactive.

In October of 1996, plaintiff complained of back and leg pain, but an MRI showed no spinal abnormalities. Plaintiff showed normal strength and reflexes, and it was recommended that he begin an exercise program.

In December of 1996, plaintiff's pemphigus flared-up again, and Dr. Guitart increased his Prednisone dosage. However, plaintiff's condition improved within two weeks. Notes admitted at the hearing from both Dr. Guitart and Dr. Chen of Northwestern Memorial Hospital show that plaintiff's condition improved steadily in response to Prednisone treatment.

In March 1997, Dr. Ettlin, the Chief of Oral Medicine at Northwestern Memorial Hospital, stated that plaintiff's pemphigus was controlled on a low dosage of Prednisone and other medications. In July of 1997, Dr. Ettlin reported that plaintiff's pemphigus was well under control and that his condition did not limit his physical abilities.

In June of 1998, Dr. McGillen stated that plaintiff experienced side effects from his medications including fatigue, pain, and mental clouding. Dr. McGillen also stated that he did not believe that the plaintiff could work as a result of these side effects.

In July 1998, Dr. Chen enrolled plaintiff in a research protocol using Dapsone as an alternative medication for the treatment of pemhpigus vulgaris. Plaintiff reported less frequent flare-ups of his oral lesions.

## DISCUSSION

The court is limited in its review of final decisions made by the Social Security Commissioner. The Social Security Act provides that findings of fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g); Pitts v. Sullivan, 923 F.2d 561, 564 (7th Cir. 1991). The court should uphold the ALJ's decision "if it is reached under the correct legal standard and if it is supported by substantial evidence." Schmidt v. Apfel, 201 F.3d 970, 972 (7th Cir. 2000). The substantial evidence standard has been held to require no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The reviewing court cannot make new factual determinations, reconsider evidence, or substitute its judgment for that of the Commissioner. Butera v. Apfel, 173 F.3d 1049, 1055 (7th Cir. 1999); Scivally v. Sullivan, 966 F.2d 1070, 1075 (7th Cir. 1992). The Commissioner is best able to observe the demeanor and character of witnesses, and the court will not disturb the Commissioner's determinations of witness credibility as long as they find some support in the record and are not "patently wrong." Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). Indeed, if reasonable minds could differ as to whether or not plaintiff is disabled, then we must affirm the ALJ's decision. Schmidt, 201 F.3d at 972 (quoting Books v. Chater, 91 F.3d 972, 978 (7th Cir. 1996)).

Individuals claiming disability under the Social Security Act must demonstrate that they are "disabled" or have "an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In making a disability determination, the ALJ must apply a five-step analysis. 20 C.F.R. § 416.920(a)-(f) (1995). The ALJ must determine (1) if the claimant is presently employed; (2) if the claimant's impairment is severe; (3) if the claimant's impairment is enumerated in a list of specific impairments by the regulations or the medical equivalent of one such impairment; (4) if the claimant is able to perform his or her former occupation; and (5) if the claimant is able to perform any other type of work. Id. If the ALJ makes an affirmative finding in response to any of these five inquiries, then no further review is necessary. 20 C.F.R. § 416.920(a).

Plaintiff contends that the ALJ's decision was not based on substantial evidence. First, plaintiff argues that the ALJ's finding that plaintiff's condition was "well controlled" is not supported by substantial evidence and is erroneous. Plaintiff points to his recurring flare-ups and need for large doses of medication as proof that his pemphigus is not under control. Plaintiff also asserts that the fact that Dr. Chen enrolled him in an experimental study in order to "better control" his condition further proves that his condition was not "under control" at all. However, the ALJ did not find that plaintiff's pemphigus was cured or that plaintiff would never again have flare-ups. Based on several medical reports in the record, the ALJ simply concluded that plaintiff's condition was responsive to treatment and that any future flare-ups that might occur could be properly controlled through increases in medication. Indeed, the record contains several reports from Drs. Guitart, Ettlin, and Chen that state that plaintiff's lesions are responsive to increased medication. The medical record contains several instances in which plaintiff's blistering

7

increased, only to be improved through heightened treatment. While there is never any mention of the lesions healing entirely, these reports often state specifically that plaintiff's pemphigus is "under control." The fact that Dr. Chen sought to include plaintiff in a study of an experimental study is irrelevant in regard to whether or not the pemphigus was under control. Therefore, there was substantial evidence for the ALJ to base a finding that plaintiff's condition was under control.

Second, plaintiff argues that the ALJ's finding that plaintiff has the Residual Functional Capacity to perform a limited range of light work was not based on substantial evidence. The ALJ's finding was based predominantly on his determination of the plaintiff's credibility and on the plaintiff's own testimony. Plaintiff claims that he is disabled, not because he suffers from pemphigus vulgaris, but rather as a result of the medications that he takes to treat the pemphigus. If plaintiff were to claim that the pemphigus was the cause of his alleged disability, then objective medical evidence could be relied upon in making a sound determination of disability. However, because plaintiff's claim rests solely on the symptoms of pain and mental cloudiness that result from taking his medications, only subjective evidence is available. "[W]henever the individual's statements about the intensity, persistence or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." Social Security Ruling 96-7p.

In this case, there was no objective medical evidence to determine the extent of the side effects of the medications as experienced by the plaintiff. There was, however,

substantial testimony on record that caused the ALJ to believe that plaintiff's allegations of pain were exaggerated. For example, when plaintiff was asked what he normally does during the day, he testified, "[i]n the morning I walk a mile, sometimes two miles." Shortly after, plaintiff testified that he could not stand, or stand and walk around, for a period of one hour. When asked how long it took him to take his morning walks, however, plaintiff testified, "[f]orty five minutes and sometimes an hour and a half." Plaintiff reported other activities that tended to suggest that his allegations of being disabled were exaggerated. Plaintiff testified that he sometimes feels well enough to help his wife with cooking, yard work, housework, shopping and other activities. Plaintiff also testified that he is sometimes able to engage in belt making or "leather work." Although none of these activities alone is necessarily dispositive in determining an individual to be disabled, when considered along with the entire record, the activities combined are sufficiently substantial to form the basis for a determination of credibility. Therefore, the ALJ did not err in finding plaintiff's allegations to be exaggerated. The record contained sufficient evidence for the ALJ to reasonably reach that conclusion.

The ALJ also found the testimony of the plaintiff's stepdaughter to lack credibility. Ms. Tonkin's testimony was generally corroborative of plaintiff's testimony, and was based merely on her own observations of her stepfather and whatever complaints of pain he made to her. Because her testimony was based on purely subjective assessments of her stepfather's condition, the ALJ's finding that her testimony lacked credibility was proper.

Plaintiff further contends that the ALJ was erroneous in discrediting the medical opinion of the treating physician, Dr. McGillen. Plaintiff cites <u>Social Security Ruling 96-2p</u> which states the opinion of a treating physician should be given controlling weight when (1) the treatment comes from a treating source; (2) the opinion is a medical opinion; (3) the treating source's medical opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques; and (4) the medical opinion is consistent with other substantial evidence in the individual's case record.

The ALJ found that Dr. McGillen's medical opinion that plaintiff was unable to return to work was not based on medically acceptable clinical and laboratory diagnostic techniques, but rather on plaintiff's own subjective reports of side effects. Dr. McGillen reports no objective medical finding to verify plaintiff's symptoms. He merely echoes the complaints made to him by his patient. Furthermore, there is substantial evidence to suggest that Dr. McGillen's determination that plaintiff was unable to work was inconsistent with the opinions of Drs. Ettlin, Guitart, and Chen. The reports of these three doctors all state that plaintiff's condition is responsive to treatment and gradually improving. Though all three doctors express concern regarding flare-ups and the reappearance of lesions at one time or another, they all conclude that such reoccurrences can be controlled through medication. None of the three doctors from Northwestern Memorial Hospital at any time suggest that plaintiff's side effects from medications are so severe that he should not work. The ALJ may reject the opinion of a physician when that opinion is inconsistent with the opinions of other physicians. <u>Diaz v. Chater</u>, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Although there is some evidence supporting plaintiff's

10

claims, there also was substantial evidence to support the ALJ's credibility findings. Therefore, we decline to disturb those findings.

Finally, plaintiff argues that the ALJ's failure to call a Vocational Expert in this case constitutes reversible error. Plaintiff claims that, because of his illiteracy, he should have been considered disabled with a sedentary Residual Functional Capacity under Rule 201.17. Plaintiff argues further that, because the ALJ found that plaintiff's abilities fell somewhere between the guidelines of Rule 202.16 and 201.17, a Vocational Expert should have been called to assist in the determination process. Social Security Rule 83-12.

Plaintiff is incorrect in his assertion that the ALJ's findings were "somewhere 'in the middle' in terms of regulatory criteria...." The ALJ reasonably and firmly concluded that plaintiff was not disabled. This finding was based on the fact that plaintiff was classified as a younger individual, illiterate in English with a marginal education who was capable of performing light, unskilled work. Relying on the Medical-Vocational Guidelines, the ALJ properly applied Rule 202.16 in determining that plaintiff was not disabled. This ruling is consistent with other evidence in the record since Social Security Rule 85-15 provides that unskilled work requires the ability to understand, carry out, and remember simple instructions and to deal primarily with objects rather than with data or people. These requirements are consistent with the finding that plaintiff is unfit to perform complex work and is not capable of frequent interaction with coworkers. Light work also would not require plaintiff to lift heavy objects or be exposed to environmental irritants. Therefore, all reasonable medical restrictions that appear in the record were

considered and accommodated by the ALJ's ruling that plaintiff is capable of performing light, unskilled work. A Vocational Expert was not necessary in this case.

## CONCLUSION

The Commissioner's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. This case is hereby terminated.

It is so ordered.

/Wayne R. Andersen
United States District Judge

Dated: October 31, 2000